UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TAYLOR B. THEUNISSEN, MD, LLC,<br>Individually and as Assignee and Authorized Representative of J.C.<br>      Plaintiff, | CIVIL ACTION |
| VERSUS | NO. 24-531 |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT<br>      Defendant. | SECTION "A" (4) |

### ORDER AND REASONS

The following motions are before the Court: **Defendant's Motion to Dismiss (Rec. Doc. 6)** and **Defendant's Motion to Dismiss State Law and Administrative Procedures Act Claims (Rec. Doc. 11).** Pursuant to Federal Rule of Civil Procedure 12(d), the motions have been converted to motions for summary judgment.[1] The converted motions, submitted for consideration on November 13, 2024, are before the Court on the briefs without oral argument.

I. **Background**

    i. *Factual background*

This matter arises out of an alleged underpayment by Government Employees Health Association, Inc. ("GEHA") for medical services rendered to Patient J.C. ("J.C.") by Dr. Taylor B. Theunissen, MD, LLC ("TBT" or "Plaintiff").[2] At all relevant times, J.C. was a beneficiary of a health benefit plan ("Plan") sponsored and administered by GEHA.[3] The Plan was available to

---

[1] *See* Rec. Doc. 18.

[2] TBT identified Patient J.C. only by initials due to privacy concerns. *See* Rec. Doc. 1, at 1 n.1. Dr. Theunissen is suing OPM in his individual capacity and as assignee and authorized representative of J.C.

[3] *Id.* ¶ 1; *see also* Rec. Doc. 21, at 2 n.1 ("Pursuant to its contract with OPM, GEHA makes payment to covered providers and facilities with which it contracts, or in certain cases provides reimbursement directly to the enrollee, for benefits covered under the terms of the applicable Plan brochure, which is a part of the OPM-carrier contract.") (citing 5 U.S.C. §§ 8902(a), 8903(1), 8907(b)); Rec. Doc. 1-1, at 1 (noting the Plan is "Sponsored and administered by: Government Employees, Health Association, Inc."). The Plan was attached to Plaintiff's

J.C., who is an employee of the federal government,[4] via a GEHA contract with Defendant, Office of Personnel Management ("OPM"), as authorized by the Federal Employees Health Benefits Act ("FEHBA").[5]

In 2019, J.C. was diagnosed with breast cancer.[6] She underwent bilateral mastectomies ("mastectomy") on February 13, 2019.[7] Prior to her mastectomy, J.C. assigned her provider the right to receive payment of benefits from the Plan and, if necessary, take legal action to recover benefits on her behalf.[8] Immediately following her mastectomy, Dr. Theunissen and Dr. Alireza Sadeghi, working as co-surgeons, performed bilateral breast reconstructions with deep inferior epigastric perforator flaps ("Reconstructive Procedure").[9]

According to TBT, he requested a pre-authorization for the Reconstructive Procedure before conducting J.C.'s mastectomy.[10] But as his complaint makes clear, "[t]he Reconstructive Procedure is directly covered by the Plan" and "the Plan specifically exempts from the preauthorization requirement breast reconstruction [if it is] 'immediate reconstruction for

---

Complaint and is properly before the Court. Internal citations to the Plan will refer to page listed on the CM/ECF heading.

[4] Rec. Doc. 1, ¶ 6.

[5] Rec. Doc. 1-1, at 6.

[6] Rec. Doc. 1, ¶ 16.

[7] *Id.* ¶ 28.

[8] *Id.* ¶¶ 14-15; *see also* Rec. Doc. 19-3 ("Assignment of Benefits/Designated Authorized Representative/Limited Special Power of Attorney"). The Plan defines "Assignment" as "An authorization by an enrollee or spouse for the Plan to issue payment of benefits directly to the provider." Rec. Doc. 1-1, at 115. It is not uncommon for patients to assign their benefits under the Plan to a provider. *See, e.g.*, *Transitional Learning Cmty., Inc. v. OPM*, 220 F.3d 427, 429 (5th Cir. 2000).

[9] Rec. Doc. 1, ¶ 17; *see also* Rec. Doc. 1-1, at 58 (listing the Reconstructive Procedure as a covered surgery under the Plan).

[10] Rec. Doc. 1, ¶ 19; *see also* Rec. Doc. 1-1, at 22.

diagnosis of cancer.'"[11] Accordingly, preauthorization (or, as the Plan refers to it, "precertification") was unnecessary for the Reconstructive Procedure.[12]

But precertification *was* necessary under the Plan for J.C.'s in-hospital stay.[13] And, as evidenced by the February 6, 2019 letter from Conifer Health Solutions, she received the requisite precertification.[14] According to TBT, however, the February 6 letter is the basis for an alleged "binding contractual agreement" between TBT and OPM for performance of the Reconstructive Procedure.[15]

---

[11] Rec. Doc. 1, ¶¶ 23, 25. Rec. Doc. 1-1, at 58 (listing the Reconstructive Procedure under "Benefits Description").

[12] Plaintiff's complaint refers to the letter as a "Preauthorization Letter," but under the Plan, the letter is more accurately described as a "Precertification Letter." *See* Rec. Doc. 1-1, at 21 ("The pre-service claim approval process for inpatient hospital admissions (called precertification) and for other services, are detailed in this Section."). The term "Preauthorization" does not appear in the Plan.

[13] *See* Rec. Doc. 1-1, at 22–24 (Plan provisions regarding precertification).

[14] Rec. Doc. 19-1 (Feb. 6, 2019 letter).

[15] Rec. Doc. 1, ¶ 27. According to TBT,

> Through correspondence dated on or about February 6, 2019 ("Preauthorization Letter"), GEHA, through Conifer Health Solutions, authorized the Reconstructive Procedure and that both TBT and Dr. Sadeghi would be providing services, referral number 450701. Through the Preauthorization Letter, GEHA specifically determined that the Reconstructive Procedure was medically necessary.

*Id.* ¶ 21-22 (paragraph numbering omitted).

The Court doubts the merits of this allegation for several reasons. First, as already discussed, precertification for the Reconstructive Procedure was expressly exempted under the Plan. *Id.* ¶ 25 (quoting Rec. Doc. 1-1, at 25). Second, the letter makes no reference to the medical necessity of the Reconstructive Procedure; instead, under "Approval of Service," it states: "Service Approved: 3: Inpatient Admission Med or Surg (excluding NICU), DOA February 13, 2019 and LCD 2/15/19." Rec. Doc. 19-1; *see also* Rec. Doc. 20-2, Affidavit of Kathryn Peterson, OPM Program Manager (Disputed Claims), ¶ 7 ("This document confirmed the patient's demonstrated medical necessity for a three-day post surgical inpatient admission beginning February 13, 2019."). Third, the letter expressly stated:

> This review is a determination of medical necessity for confinement. It is not a verification of benefits. For benefit verification or an approval for associated procedures, please contact GEHA.

Rec. Doc. 19-1. And finally, the letter notes that "this [letter] is not a guarantee of payment." *Id.*

For these reasons and others, OPM argues that the precertification letter is not evidence of a contract for performance of the Reconstructive Procedure and, thus, Plaintiff's breach of contract and detrimental reliance claims fail. Rec. Doc. 21, at 2; *see Hornbeck Offshore Operators, LLC v. Cross Group, Inc.*, 16-0174 (La. App. 1st Cir. 10/31/16), 207 So.3d 1141, 1146 ("The existence of the contract and its terms must be proven by a preponderance of the evidence, either direct or circumstantial."), *writ denied*, 16-2095 (La. 1/9/17), 214 So.3d

The instant dispute began when TBT submitted a claim for the Reconstructive Procedure to GEHA under the Plan and the claim was not reimbursed at the "reasonable and customary" amount the parties allegedly agreed to in the February 6 letter from Conifer Health Solutions.[16] In response to the adverse determination, TBT (acting on behalf of J.C.) submitted first and second level appeals to OPM via the FEHBA claim review process outlined in the Code of Federal Regulations, thereby exhausting his administrative remedies.[17] OPM ultimately issued a final ruling denying TBT's appeal on September 10, 2021, noting "Should [J.C.] wish to pursue this matter, she must now file suit against [OPM] in Federal court."[18]

### ii. *Procedural background*

On March 1, 2024, TBT filed suit on behalf of J.C. and in his individual capacity.[19] On behalf of J.C., TBT sought judicial review of the final agency action and alleged violations of the

---

872. The Court notes the substantial lack of evidence supporting the existence of a contract, but declines to rule on the merits of OPM's argument because, as discussed *infra*, Plaintiff's state law claims are preempted by FEHBA.

The Court also notes that TBT is an experienced litigant who is well aware of the details that are ordinarily included in precertification letters. *See infra* n. 19. In *Taylor B. Theunissen, MD, LLC v. United Healthcare of Louisiana, Inc.*, a case filed only a year before the instant case, TBT asserted similar state law claims for breach of contract and detrimental reliance. No. 22-2820, 2023 WL 2913529, at *1 (E.D. La. April 12, 2023). Unlike the case at hand, his state law claims there were based on a precertification letter that described in great detail the procedure he was authorized to perform. *See id.* ("The March 5, 2018 pre-authorization request submitted to UHC explicitly stated two surgeons, Dr. Sadeghi and Dr. Theunissen, would be performing the first reconstruction procedure.") (citing No. 22-2820, Rec. Doc. 20-5)).

[16] *Id.* ¶¶ 27–32. It's TBT's position that the "reasonable and customary" amount it should have been reimbursed under the Plan totals $129,969.98. *Id.* ¶¶ 27, 37.

[17] *Id.* ¶¶ 41, 47; *see also* Rec. Doc. 9, at 4; Rec. Doc. 9-2, at 2; 5 C.F.R. § 890.105(e) ("OPM review"); 5 C.F.R. 890.107(d)(1) ("An action under paragraph (c) . . . [m]ay not be brought prior to exhaustion of the administrative remedies provided in § 890.105.").

[18] Rec. Doc. 9-2, at 2.

[19] *See generally* Rec. Doc. 1. This is not the first time Dr. Theunissen has raised claims for underpayment of benefits for breast reconstruction surgery. It's likewise not his first attempt to do so while asserting nearly identical state law claims. He has filed at least four other lawsuits alleging similar claims against insurers, but none, like here, against OPM. And the other lawsuits are based on ERISA plans, not, like here, on a FEHBA plan. *See Taylor Theunissen, M.D. LLC v. United HealthCare Grp., Inc.*, 365 F. Supp. 3d 242, 247–48 (D. Conn. 2019) (dismissing claims based on anti-assignment clause in ERISA plan and finding that that no basis for state law promissory estoppel claim existed because the pre-authorization letters did not contain a clear and definite promise to pay benefits); *Sadeghi v. Aetna Life Ins. Co.*, 564 F. Supp. 3d 429, 470–72 (M.D. La. 2021) (granting

Administrative Procedure Act ("APA"). In his individual capacity, TBT asserted state law causes of action against OPM for breach of contract and detrimental reliance.[20] In turn, OPM filed two motions to dismiss.[21]

OPM's first motion attacked the timeliness of Plaintiff's claim for judicial review, arguing the claim prescribed on January 1, 2023—over a year before this lawsuit was filed.[22] In response, Plaintiff argued the three-year prescription period does not commence until all administrative remedies are exhausted.[23] Relying on OPM's September 10, 2021 letter giving notice that a final administrative review had been rendered, Plaintiff posited that the prescription period runs until December 31, 2024, making the judicial review claim timely.[24]

Defendant's second motion argued (1) TBT's state law claims for breach of contract and detrimental reliance are preempted by FEHBA; and (2) because FEHBA provides an adequate remedy for judicial review, Plaintiff's claims under the APA are precluded.[25] Plaintiff

---

partial summary judgment and holding that letters granting an in-network exception to providers did not constitute a separate contract or agreement between the insurer and provider), *id.* at 455–56 (agreeing with the defendant's contention that the lawsuit was "simply a continuance of the ERISA appeal procedures," and noting that TBT's claims were "disingenuous at best"); *Tamburrino v. United Healthcare Ins. Co.*, No. 21-12766, Rec. Doc. 35, at 4–8 (D.N.J. April 25, 2022) (dismissing TBT's claims due to anti-assignment provision in a patient's health plan); *Taylor B. Theunissen, MD, LLC*, 2023 WL 2913529, at *10 (dismissing state law claims for breach of contract and detrimental reliance as preempted by ERISA).

[20] *Id.* ¶¶ 72–73.

[21] *See* Rec. Doc. 6; Rec. Doc. 11.

[22] Rec. Doc. 6-1, at 4 (noting that both the Code of Federal Regulations and the Plan state that a cause of action for judicial review must be brought no later than "December 31 of the third year after the year in which [the patient] received the disputed services," which, in this case, were administered on February 13, 2019) (quoting 5 C.F.R. § 890.107(d)(2) and Rec. Doc. 1-1, at 105).

[23] Rec. Doc. 9, at 7 (quoting *Gonzalez v. Blue Cross Blue Shield Assoc.*, 62 F.4th 891, 896 (5th Cir. 2023) (quoting 5 C.F.R. §§ 890.105(a)(1), 890.107(d)(1))).

[24] Rec. Doc. 9-2, at 2; Rec. Doc. 9, at 8.

[25] *See generally* Rec. Doc. 11-1.

subsequently withdrew its claims under the APA, leaving only the preemption issue to be decided by the Court.[26]

The Court reviewed the motions and exercised its discretion to convert the motions to motions for summary judgment for two reasons.[27] **First**, the complaint and responses in opposition to the motions relied on certain extraneous documents that were not attached to the complaint or the motions but were central to Plaintiff's argument.[28] This triggered the Court's obligation under Rule 12(d) to convert the motions if it opted to consider them. *See Boateng v. BP, P.L.C.*, 779 F. App'x 217, 219 (5th Cir. 2019) ("A district court converts a Rule 12(b)(6) motion to dismiss into a motion for summary judgment when matters outside of the pleadings are presented to and not excluded by the court. Such matters include evidence introduced in opposition to a 12(b)(6) motion that provides some substantiation for and does not merely reiterate what is said in the pleadings.") (internal citations and quotations omitted)). **Second**, only two issues remained before the Court: (i) whether Plaintiff's claim for judicial review should be dismissed as untimely; and (ii) whether Plaintiff's state law claims are preempted by FEHBA.[29]

In exercising its discretion to convert the motions, the Court granted the parties twenty-six days to file supplemental briefing and submit any additional evidence in support of their positions, and an additional seven days to reply to the opposing party's supplemental brief.[30] *See Hodge v.*

---

[26] *See* Rec. Doc. 14, at 2 n.2.

[27] *See* Rec. Doc. 18, at 5–6.

[28] These documents principally include the Preauthorization Letter, which is the basis for Plaintiff's breach of contract and detrimental reliance claims, and the September 10, 2021 correspondence between OPM and Plaintiff's counsel, which establishes the date of the final administrative review of the TBT Claim. *See* Rec. Doc. 1, ¶¶ 22, 27, 30, 34, 41–42, 65–68, 75; Rec. Doc. 9, at 2–4; Rec. Doc. 14, at 2–4; Rec. Doc. 9-2, at 2. Other examples include: the Assignment and Designation document (Rec. Doc. 1, ¶¶ 14-15); the TBT claim (*Id.* ¶ 29; Rec. Doc. 9, at 3–4; Rec. Doc. 14, at 2–5); and various referenced correspondences between GEHA and/or OPM and counsel for TBT (*see, e.g.*, Rec. Doc. 1, ¶¶ 30–32, 35–36, 39, 41–42, 45, 75; Rec. Doc. 9, at 3–4; Rec. Doc. 14, at 2–4).

[29] Rec. Doc. 18.

[30] *Id.* at 6.

*Engleman*, 90 F.4th 840, 844 (5th Cir. 2024) ("Parties must have at least ten days' notice before the court's ruling that 'the court could convert the Rule 12(b)(6) motion into a summary judgment.'") (quoting *Holguin v. U.S. Dep't of Army*, 98 F.3d 1337, 1996 WL 556767, at *2 (5th Cir. 1996) (per curiam) (table) (unpublished) ("The only requirement is that the non-moving party have at least ten days in which to submit its own evidence.")). Each party filed supplemental memoranda and the following evidence was submitted to the Court: (i) the Preauthorization Letter; (ii) correspondence between GEHA and J.C.; (iii) the Assignment and Designation document executed by J.C.; and (iv) the declaration of Kathryn Peterson, OPM Program Manager (Disputed Claims).[31]

For the following reasons, Defendant's converted motions for summary judgment are **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

## II. Legal Standard

Summary judgment is proper where there is "no genuine dispute of material fact" and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). That is, it is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-

---

[31] *See* Rec. Doc. 19-1, Rec. Doc. 19-2, Rec. Doc. 19-3, Rec. Doc. 20-2.

moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

### III.    The Federal Employees Health Benefits Act

Congress enacted FEHBA to create "a comprehensive program of health insurance for federal employees." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 682 (2006); *see also* 5 U.S.C. §§ 8901–14. FEHBA authorizes OPM to promulgate regulations and contract with insurance "carriers" for the purpose of "negotiating and regulating health-benefits plans for federal employees." *Empire*, 547 U.S. at 682, 684; 5 U.S.C. §§ 8901(7), 8902–03, 8913. OPM then carries out that duty by entering contracts with private insurers, like GEHA, who act as carriers and provide health benefits to federal employees. *Gonzalez v. Blue Cross Blue Shield Ass'n*, 62 F.4th 891, 895 (5th Cir. 2023) (quoting *St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.*, 935 F.3d 352, 356 (5th Cir. 2019) (citations omitted)).

Notably, carriers "never take[] on the risks of an insurer in [their] relationship with OPM"—in other words, they operate more like a claims processor than an insurer. *Id.* at 896. So it is OPM, not GEHA, who has the final say on the health benefits that an employee may receive under the Plan. *Id.* Accordingly, if a dispute arises between an employee and GEHA under the plan, OPM ultimately resolves the issue. *Id.* In *Gonzalez v. Blue Cross Blue Shield Association*, the Fifth Circuit concisely summarized the dispute resolution protocol as follows:

> The patient begins the process by submitting a claim to [the carrier]. If [the carrier] denies the claim, the patient can ask [the carrier] to reconsider. If [the carrier] affirms the denial, then the patient can ask for OPM's review. If OPM also denies the claim, then the patient can then seek judicial review of OPM's denial.

8

> OPM's regulations require a patient to exhaust both the carrier and OPM review processes before seeking judicial review. The regulations also say that a patient who wishes to challenge a denial may sue only OPM, not [the carrier]. The recovery in such a suit shall be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute. The Plan documents describe all of these procedures.

62 F.4th at 896 (cleaned up).

When, as here, a patient has assigned her right to collect benefits under the Plan to her provider, the provider may then stand in the shoes of its patient and bring suit against OPM. *See id.* at 899 ("As relevant here, the district courts of the United States have original jurisdiction of a civil action or claim against the United States founded on 5 U.S.C. §§ 8901–14, that is, FEHBA. The government has thus consented to suits to vindicate rights or enforce obligations created by FEHBA.") (cleaned up); *see also RAI Care Ctrs., LLC v. OPM*, 459 F. Supp. 3d 124, 132 (D.D.C. 2020) (noting "[A]lthough no case from this Circuit has addressed whether an assignee may sue under FEHBA and 8 C.F.R. § 8901.107 . . . . Without specifically addressing the issue, the Tenth and Fifth Circuits have permitted suits along these lines to proceed" and collecting cases in support of the proposition).

## IV. Discussion

Two issues are directly before the Court on summary judgment: (i) whether Plaintiff's claim for judicial review should be dismissed as untimely; and (ii) whether Plaintiff's state law claims for breach of contract and detrimental reliance are preempted by FEHBA.

### i. *Plaintiff's judicial review claim is untimely.*

Under 5 C.F.R. § 890.107(c)–(d), a covered individual may seek judicial review of OPM's final action on the denial of a health benefits claim subject to three limitations: first, the claim may not be brought prior to the exhaustion of the administrative remedies outlined in Section 890.105

of Code of Federal Regulations; second, and most relevant here, the claim may be brought no later than December 31 of the third year after the year in which the care or service was provided; and third, the claim will be limited to the record that was before OPM when it rendered its decision affirming the carrier's denial of benefits. Here, only the second limitation is at issue, and it is undisputed that the "care or service" was provided to J.C. in February 2019. *See* FED. R. CIV. P. 56(a). As such, the Court must determine whether OPM is entitled to judgment as a matter of law. *Id.*

OPM argues that a plain reading of the regulation unambiguously establishes that Plaintiff's claims are time-barred because the care was provided to J.C. in February 2019.[32] Accordingly, its position is that the deadline to file this lawsuit was December 31, 2022.[33]

In opposition, Plaintiff argues that the three-year prescription period starts on the date of the final agency decision, which was rendered September 10, 2021.[34] Under this analysis, the deadline to file this lawsuit is December 31, 2024.[35] Plaintiff further argues that OPM's reading of the regulation results in the limitations period commencing before patients are even permitted to file their lawsuit because the clock begins to run before administrative remedies are exhausted.[36]

Having considered both parties' positions,[37] the Court returns to the relevant question before it, which is properly framed as follows: Where a patient has exhausted the administrative

---

[32] Rec. Doc. 21, at 5–6.

[33] Rec. Doc. 6-1, at 4.

[34] Rec. Doc. 19, at 6; Rec. Doc. 9-2.

[35] Rec. Doc. 9, at 8.

[36] Rec. Doc. 19, at 7 (contending that "OPM's own regulations are potentially inconsistent" because 5 C.F.R. 890.107 requires that a lawsuit be filed within three years of the care or service, but 5 C.F.R. 890.105 requires the claimant to exhaust all administrative remedies before filing suit).

[37] In support of its position, Plaintiff misguidedly relies on *Hallman v. OPM*, 5:19-516, 2021 WL 4458642 (N.D. N.Y. Sept. 29, 2021). In *Hallman*, the Court declined to find the judicial review claim time-barred because there was "conflicting evidence as to when Plaintiff received the letter and learned about OPM's final decision to deny his claim (thereby exhausting his administrative remedies)." 2021 WL 4458642, at *3. Unlike the instant case— where it is undisputed that Plaintiff received the OPM final decision more than a year before the limitations

remedies listed in § 890.105, when does the statute of limitations for judicial review under 5 C.F.R. § 890.107(d)(2) begin to run? Notably, this question has been addressed by few district courts,[38] but the text of the regulation provides a clear answer[39]—"A legal action to review final action by OPM involving denial of health benefits . . . . May not be brought later than December 31 of the 3rd year after the year in which the care or service was provided." 5 C.F.R. 890.107(c)–(d). Accordingly, Plaintiff's claim for judicial review became untimely on January 1, 2023, over a year before this lawsuit was filed. *See Pellicano v. OPM*, No. 3:17-698, 2018 WL 771362, at *6 (M.D. Pa. Jan. 19, 2018) (recommending dismissal of two claims as untimely based on the limitations period starting when the care or service was provided where the claims were filed more than a year after the limitations period ended), *report and recommendation adopted*, No. 3:17-698, 2018 WL 798172 (M.D. Pa. Feb. 9, 2018).

---

period ended (*see* Rec. Doc. 9-2)—the *Hallman* plaintiff claimed that he did not receive a final decision from OPM until three months *after* the limitations period passed. *Id.* Accordingly, the *Hallman* Plaintiff established the existence of a genuine dispute of material fact, thus precluding summary judgment.

Plaintiff also misguidedly relies on *Horvath v. Dodaro*, 160 F. Supp. 3d 32 (D.D.C. 2015) to support his proposition that "The date of that final agency decision is the relevant date for the purpose of applying the statute of limitations because Plaintiff could have brought an action under [FEHBA] at that time." Rec. Doc. 19, at 6. But a close reading of *Horvath* shows that the case concerned a discrimination claim, not a claim for judicial review. *Horvath*, 160 F. Supp. 3d, at 40 ("Plaintiff did not seek judicial review of the decision denying him benefits. However, in light of the denial of benefits by the GAO, Plaintiff proceeded to pursue a discrimination complaint, through both the GAO's Office of Opportunity and Inclusiveness and the GAO's Personnel Appeals Board ("PAB").") (internal citations omitted)). And an even closer reading of the case shows that Plaintiff's proposition has been taken out of context. The *Horvath* court was considering whether the limitations period had passed in the context of 28 U.S.C. § 2401(a) ("Time for commencing action against United States"), not 5 C.F.R. § 890.107(d)(2) (FEHBA "Court review"). *Horvath*, 160 F. Supp. 3d, at 43–44. As such, Plaintiff's argument carries no weight under these facts.

[38] *See, e.g.*, *Hallman v. OPM*, No. 5:19-516, 2020 WL 3035567, at *2 (N.D. N.Y. June 5, 2020) ("Scant caselaw exists analyzing the relevant regulations. The parties–understandably–fail to cite authority central to their contentions [regarding the issue of timeliness].").

[39] "The always primary, and here decisive, interpretive tool is the text itself." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020). Whether the rule is ambiguous is not directly at issue in this case, but the Court notes that, "if the law gives an answer—if there is only one reasonable construction of a regulation—then a court has no business deferring to any other reading." *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019). Here, there is only one reasonable construction of the regulation.

### ii. *Plaintiff's state law claims are preempted by FEHBA.*

The Court dismisses TBT's state law claims for breach of contract and detrimental reliance because federal law expressly preempts them.

FEHBA contains a preemption clause:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1). The Supreme Court has recognized the expansiveness of FEHBA's preemption clause, noting that "state law—whether consistent or inconsistent with federal plan provisions—is displaced on matters of 'coverage or benefits.'" *Empire*, 547 U.S. at 686 (quoting 5 U.S.C. § 8902(m)(1)); *see also Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 96 (2017); *Gonzalez*, 62 F.4th at 903.

FEHBA preempts state law when "(1) the FEHBA contract terms at issue relate to the nature, provision, or extent of coverage or benefits, and (2) the state law relates to health insurance or plans." *Gonzalez*, 62 F.4th at 903 (quoting *Health Care Serv. Corp. v. Methodist Hosps. Dall.*, 814 F.3d 242, 253 (5th Cir. 2016)). Both elements are met here.

First, the complaint expressly states, "[t]he Reconstructive Procedure is directly covered by the Plan," and both of Plaintiff's state law claims seek damages based on a claim for benefits related to the Reconstructive Procedure.[40] *See Gonzalez*, 62 F.4th at 901 ("OPM's regulations define 'claim' as 'a request for (i) payment of a health-related bill[ ] . . . .'" (quoting 5 C.F.R. § 890.101)). For example, Plaintiff's breach of contract claim states that, "Through the

---

[40] Rec. Doc. 1, ¶ 23; *see also* Rec. Doc. 1-1, at 58 (listing and describing the Reconstructive Procedure under "Benefits"); Rec. Doc. 1, ¶¶ 64-80; Rec. Doc. 19-1; Rec. Doc. 20-2, ¶ 7.

Preauthorization Letter, GEHA specifically determined that the Reconstructive Procedure was medically necessary."[41] As a result of this alleged determination, Plaintiff asserts that "a meeting of the minds was reached between TBT and GEHA where the Plan agreed that TBT would perform the Reconstructive Procedure for J.C. and the Plan would pay to TBT the reasonable and customary fee for such procedure."[42] Plaintiff's detrimental reliance claim likewise asserts that "TBT changed is position to its detriment based on said representations by, *inter alia*, undertaking the Reconstructive Procedure for J.C."[43] Accordingly, the first prong is satisfied because each claim necessarily "places 'at issue' Plan terms that 'relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits).'"[44] *Id.* (quoting 5 U.S.C. § 8902(m)(1)).

The second prong is also satisfied. In bringing his breach of contract and detrimental reliance claims, TBT invokes Louisiana common law. These causes of action do not specifically relate to health insurance, "but preemption reaches even a state's general laws when their ***application*** relates to the scope or administration of federal healthcare plans." *Id.* at 904. As the Fifth Circuit noted in *Gonzalez*,

---

[41] Rec. Doc. 19, at 3.

[42] Rec. Doc. 1, ¶ 68.

[43] *Id.* ¶ 77.

[44] OPM disagrees that the letter determined the Reconstructive Procedure to be medically necessary, arguing instead that the letter (characterized by OPM as a "Precertification Letter") "confirmed the patient's demonstrated medical necessity for a three-day post-surgical inpatient admission" and "satisfie[d] the Precertification requirement for an inpatient hospital admission as stated on page 20 of the 2019 GEHA Plan brochure." Rec. Doc. 20-2, at 2.

The Court notes that, here, either party's position suffices the first prong of the analysis in *Gonzalez* because both positions place at issue Plan terms that relate to the nature provision, or extent of coverage or benefits. 62 F.4th at 903.

> The key phrase, obviously, is "relates to." The ordinary meaning of these words is a broad one. The phrase means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." It is thus no surprise that the phrase expresses a broad pre-emptive purpose. A state law may "relate to" a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect.

62 F.4th at 904 (cleaned up).

TBT's common-law claims seek to hold OPM liable for allegedly breaching a contract by failing to pay what he believed to be "reasonable and customary" rates after TBT performed a procedure covered under the Plan.[45] But as just discussed, and as TBT admits in the complaint,[46] a contract or representation related to what TBT believes to be the reasonable and customary amount owed for the covered Reconstructive Procedure indisputably "relates to" the scope or administration of the Plan, and TBT's claims thus "meet the criteria for preemption." *Id.* at 904–05 (quoting 5 U.S.C. § 8902(m)(1) and *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1989)).

Accordingly;

**IT IS ORDERED** that **Defendant's Motion to Dismiss (Rec. Doc. 6)** and **Defendant's Motion to Dismiss State Law and Administrative Procedures Act Claims (Rec. Doc. 11)**, subsequently converted to motions for summary judgment (Rec. Doc. 18), are **GRANTED** and Plaintiff's clams are **DISMISSED WITH PREJUDICE.**

November 26, 2024



JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[45] Rec. Doc. 1, ¶ 23.

[46] *Id.*